IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| JONATHAN ANDRY AND THE ANDRY LAW GROUP, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | CIVIL ACTION No. _____ |
| vs. | ) ) | |
| BP EXPLORATION & PRODUCTION INC., BP AMERICA PRODUCTION COMPANY, MICHAEL KUNZELMAN AND MARK HOLSTEIN, | ) ) ) ) ) | On removal from the 16th Judicial District Court, Parish of Iberia, Louisiana: Case No. 00125618, Division H |
| Defendants. | ) ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446 and 43 U.S.C. § 1349, Defendant BP

America Production Company ("BP"), hereby gives notice and removes this case to the United

States District Court for the Western District of Louisiana, Lafayette Division.[1]  BP represents

the following in accordance with the requirement of 28 U.S.C. § 1446(a) for a "short and plain

statement of the grounds for removal."

---

[1] Following removal, BP intends to request that the Judicial Panel on Multidistrict Litigation ("JPML") consolidate this action with litigation related to the Deepwater Horizon incident currently pending in the Eastern District of Louisiana, Case No. 2:10-md-02179.  The JPML issued a ruling on August 10, 2010 transferring cases related to the Deepwater Horizon incident to the United States District Court for the Eastern District of Louisiana to be consolidated before the Honorable Carl J. Barbier. *See* Transfer Order, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, Doc. 1 (JPML filed Aug. 10, 2010).  Since that time many cases have been transferred into MDL No. 2179 ("the MDL").

## BACKGROUND AND PROCEDURAL REQUIREMENTS

1. BP is a defendant in the matter styled *Jonathan Andry and The Andry Law Group, LLC v. BP Exploration & Production Inc., BP America Production Company, Michael Kunzelman and Mark Holstein*[2] pending in the 16th Judicial District Court, Parish of Iberia, Louisiana and bearing Case No. 00125618 ("State Court Action").

2. Plaintiffs appear to have filed their Petition for Defamation in the State Court Action on January 19, 2015.[3]

3. BP America Production Company was served with process on May 5, 2015.  Mr. Holstein was served with process pursuant to the Louisiana Long Arm Statute on May 11, 2015.  BP Exploration & Production Inc. has not been served.

4. This Notice of Removal is timely filed, as it is being filed within thirty days after BP's receipt of Plaintiffs' Petition setting forth the claims for relief and within thirty days after service of process as required by 28 U.S.C. § 1446(b), as computed pursuant to Fed. R. Civ. P. 6(a).

5. BP attaches as Exhibit B hereto a copy of all process, pleadings, and orders served upon it in the State Court Action, as required by 28 U.S.C. § 1446(a).

## FACTUAL ALLEGATIONS

6. Plaintiffs' Petition begins with a reference to "the spill" that began with the blowout at the Macondo well on April 20, 2010, where the *Deepwater Horizon* drilling rig was operating. Pet. ¶ 4.  It also refers to the litigation that followed the spill.  *Id.* ¶ 2.  Above all, however, it focuses on the agreement that BP entered with a class of plaintiffs and that the United States

---

[2] Plaintiffs spelled Mark Holstein's and Michael Kunzelman's names incorrectly in the original case caption.  These names are corrected here.

[3] The Petition was transmitted to the court by fax on this date.  It was not docketed until January 26, 2015.  *See* State Court Action Docket at 1 (Exhibit A).

District Court for the Eastern District of Louisiana approved to settle a significant body of spill-related claims.  The Petition asserts that BP is attempting "to renege on the Settlement Agreement and/or to get it thrown out," *id.* ¶ 5, by, among other things, launching an "unprecedented worldwide media attack" that was "intentionally designed to intimidate the Court, and [Claims Administrator Mr. Patrick] Juneau and other claimants and other potential clients," *id.* ¶ 6.  Plaintiffs claim that BP is "attempt[ing] to dodge payment of its general obligations to pay BEL claims required by its Settlement Agreement."  *Id.* ¶ 15.  Plaintiffs also allege that BP leaked "confidential[] claims information it received from the Claims Administrator" in violation of various court orders in the MDL as part of a "campaign to defame the plaintiff and to make BP seem like it was a 'victim.'"[4]  *Id.* ¶¶ 7, 10, 13–14, 25.

7.  The Petition makes frequent reference to court-appointed Special Master Louis J. Freeh and his investigation into the facts and circumstances leading to the resignation of Lionel H. Sutton, III from the Court Supervised Settlement Program ("CSSP") and possible ethical violations or other misconduct within the CSSP, which was established to administer the claims process called for by the Settlement Agreement.  *See id.* ¶¶ 12, 17–19, 23–24. Plaintiffs attack Special Master Freeh's September 6, 2013 report to Judge Barbier of the Eastern District of Louisiana on the results of his investigation as "inadmissible/untrustworthy."  *Id.* ¶ 18.  Furthermore, they suggest that Special Master Freeh's investigation was not independent and allege "[u]pon information and belief, Mr. Freeh's firms' business relationships with [BP's counsel Kirkland & Ellis LLP and Williams

---

[4]   The Petition alleges that BP "disclos[ed] confidential information about the plaintiffs' claim" in the CSSP.  Pet. ¶ 25.  Plaintiffs Jonathan Andry and The Andry Law Group, LLC do not allege that they submitted a claim to the CSSP.  To BP's knowledge, they have not done so. Plaintiffs also allege that BP "leaked" confidential information regarding claims submitted by other claimants and The Andry Law Firm, LLC.  *See* Pet. ¶¶ 20–24.

& Connolly LLP] resulted in him receiving directions and in receiving a significant compensation to him or his firm." *Id.* ¶¶ 18–19.  These allegations—incredible and unsubstantiated as they may be—form a crucial underpinning of the Petition.

8.  Plaintiffs allege that Defendants' statements in pleadings and advertisements reporting the results of Special Master Freeh's investigation are false and defamatory.  *Id.* ¶¶ 16, 22.

9.  The Settlement Agreement specifies that Judge Barbier of the Eastern District of Louisiana retains "continuing and exclusive jurisdiction" over the settlement, including "over the administration and enforcement of the Agreement and the distribution of its benefits . . ." Economic & Property Damages Settlement Agreement, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, Doc. 6430-1, ¶¶ 18.1, 38.40 (E.D. La. filed May 3, 2012) ("Agreement").  The court expressly incorporated its continuing jurisdiction into the order approving the Settlement, and the Fifth Circuit has recognized the court's continuing and exclusive jurisdiction.  *See* Order & Reasons, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, Doc. 8138, at 9 (E.D. La. entered Dec. 21, 2012) ("The Settlement Program and Claims Administrator are subject to [the] Court's continuing and exclusive jurisdiction."); *see also In re Lake Eugenie Land Dev. v. BP Exploration & Prod. (In re Deepwater Horizon)*, No. 13-30843, ---F.3d.---, 2015 WL 2166593, at *1 (5th Cir. May 8, 2015) (recognizing that the Settlement Agreement confers continuing and exclusive jurisdiction on the "Court," defined as the Eastern District of Louisiana, Judge Barbier presiding); *In re Lake Eugenie Land Dev. v. BP Exploration & Prod. (In re Deepwater Horizon)*, 732 F.3d 326, 339 (5th Cir. 2013) (remanding to the court questions related to the CSSP's interpretation of the Settlement Agreement); *BP Exploration & Prod. Inc. v.*

*Johnson*, 538 F. App'x 438 (5th Cir. 2013) (per curiam) (vacating a summary judgment decision in the Southern District of Texas in favor of transferring the case to the Eastern District of Louisiana because it should have heard the case initially).

10. The Petition repeatedly recognizes the fact that the Eastern District of Louisiana properly should have jurisdiction over this case.

11. *First*, the Petition refers to BP's alleged media attack aimed at "this Court." Pet. ¶ 6. Notably, the Petition lacks any allegation of any statement by BP with respect to the 16th Judicial District Court, Parish of Iberia, Louisiana. This raises the inference that the Petition originally was drafted to be filed in the MDL that later was retrofitted to serve as an ostensible stand-alone complaint in state court.

12. *Second*, Plaintiffs assert that a filing in the MDL pending before Judge Barbier was among the allegedly defamatory actions taken by BP. Pet. ¶ 16.

13. *Third*, Plaintiffs allege that BP falsely attacked The Andry Law Firm, LLC in a series of advertisements in *The New York Times, The Washington Post*, and *The Wall Street Journal*. Pet. ¶ 22. A similar defamation action by Gilbert V. Andry IV and The Andry Law Firm, LLC based on nearly identical allegations was properly removed to federal district court and consolidated in the MDL. *See Andry, et. al. v. BP Exploration & Prod. Inc., et al*, No. 2:14-cv-01647 (E.D. La.).

## BASES FOR FEDERAL COURT JURISDICTION

**This Court Has Jurisdiction Pursuant to the Outer Continental Shelf Lands Act.**

14. The first basis for removing the State Court Action to this Court relates to the fact that this lawsuit arises in connection with the *Deepwater Horizon's* drilling operations occurring on the Outer Continental Shelf ("OCS" or "the Shelf"). As a result, the State Court Action falls within the jurisdictional grant of the federal Outer Continental Shelf Lands Act ("OCSLA"),

Pub. L. No. 83-212, 67 Stat. 462 (1953) (codified as amended at 43 U.S.C. §§ 1331–

1356(b)).

15. OCSLA provides, in relevant part, that "district courts of the United States shall have

jurisdiction of cases and controversies *arising out of, or in connection with* (A) any operation

conducted on the outer Continental Shelf which involves exploration, development, or

production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which

involves rights to such minerals."  43 U.S.C. § 1349(b)(1) (2012 & Supp. 2013) (emphasis

added).

16. OCSLA defines "minerals" to include "oil, gas, sulphur, geopressured-geothermal and

associated resources."  43 U.S.C. § 1331(q).  "Exploration" is the "process of searching for

minerals, including . . . any drilling."  43 U.S.C. § 1331(k).

17. On April 20, 2010, the date the oil spill began, the *Deepwater Horizon* was in the Gulf of

Mexico working at the Macondo well.  The Fifth Circuit has noted that *the Deepwater*

*Horizon*'s purpose was to "drill the Macondo well, which is located on the sea floor at

Mississippi Canyon Block 252."  *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704

F.3d 413, 418 (5th Cir. 2013).  These operations were part of BP's "exploration and drilling

operations in the Gulf of Mexico."  *Id.*  The Northern District of Florida has reached a similar

conclusion: "[w]hen it exploded, the *Deepwater Horizon* was operating on the outer

continental shelf.  Its operations were part of the exploration for, and intended development

and production of, continental-shelf oil."  *Phillips v. BP p.l.c.*, No. 4:10cv259-RH/WCS,

2010 WL 3257737, at *1 (N.D. Fla. Aug. 17, 2010).  Likewise, the court in MDL 2185 has

held that even lawsuits concerning securities filings which allegedly contained

misrepresentations in connection with Shelf drilling activities fall within OCSLA's broad

grant of federal jurisdiction.  *See* Mem. & Order, *In re: BP p.l.c. Sec. Litigation*, No. 4:10-md-2185, Doc. 441 (S.D. Tex. entered Oct. 1, 2012) ("MDL 2185").  In fact, the Fifth Circuit has now affirmed OCSLA jurisdiction over cases involving an injury occurring far away from the Shelf.  *In re Deepwater Horizon*, 745 F.3d 157, 164 (5th Cir. 2014) (rejecting the argument that OCSLA requires that a plaintiff's injury occur on an OCSLA "situs" in order to trigger federal jurisdiction), *cert denied sub nom, Louisiana ex rel Ballay v. BP Exploration & Prod. Inc.*, 135 S. Ct. 401 (2014).

18. In a case especially relevant to the current dispute, the Fifth Circuit recently held that OCSLA jurisdiction encompasses a dispute over whether the CSSP's predecessor, the Gulf Coast Claims Facility, entered a contract to settle the claims of a *Deepwater Horizon* responder.  *Johnson v. BP Exploration & Prod. Inc., et al.*, No. 14-30269, slip op. at 11 n.6 (5th Cir. May 13, 2015).  Plaintiff challenged federal jurisdiction under OSCLA by filing motions to remand in the Southern District of Texas and the Eastern District of Louisiana, where the case was transferred.  *Id.*  The district courts did not rule on the motions, but "[a]fter reviewing the record and the applicable law," the Fifth Circuit concluded that it could exercise subject matter jurisdiction over the case.  *Id.*  Unlike the current case, which additionally triggers federal jurisdiction under the Settlement Agreement and the continuing injunction and retention of exclusive federal jurisdiction it establishes, *Johnson* did not involve the CSSP and relied strictly on OCSLA for federal jurisdiction.

19. The State Court Action "aris[es] out of" and "in connection with" a drilling operation on the outer Continental Shelf.  Plaintiffs concede as much by alleging that BP defamed them in order to undermine the Settlement Agreement entered into in order to resolve claims arising

out of or in connection with the *Deepwater Horizon* spill and to avoid paying Business and Economic Loss ("BEL") claimants.  Pet. ¶¶ 5–7, 10, 15.

20. Even among the extraordinarily outrageous and baseless claims in Plaintiffs' Petition, Plaintiffs' claim that Mark Holstein committed "gross negligence [that] resulted in the death of 11 people" stands out for as a particularly brazen falsity—ironically, made in the course of a purported defamation claim.  *See id.* ¶ 6.  Nevertheless, Plaintiffs claim that its suit is based on this alleged wrongdoing, and the settlement related to the spill, bring it well within the purview of OSCLA jurisdiction.

21. Plaintiffs claim this lawsuit concerns a $7.6 million award from the CSSP to a New Orleans law firm.  *See id.* ¶¶ 17, 22.

22. Plaintiffs also allege that BP has "leaked" confidential claimant information submitted to the CSSP, *see id.* ¶¶ 7, 10, 13–14, 20, 25, and their claim rests, in part, upon Plaintiffs' assertion that Special Master Freeh's investigation of the CSSP was not independent and that his allegations were false, *see id.* ¶¶ 12, 17–19, 23–24.  The CSSP exists exclusively for the purpose of resolving claims arising out of or in connection with the *Deepwater Horizon* spill, and allegations concerning the CSSP's operations or the court-appointed Special Master's investigation thereof necessarily arise out of and are connected with the spill.

**This Court Has Jurisdiction Pursuant to the Federal Question Statute.**

23. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, the federal question statute, because the real gravamen of this case—whether BP's allegedly defamatory statements in court filings, advertisements, and to the press were part of a "strategy" to undermine the Settlement Agreement entered into to resolve spill claims—arises in connection with two federal enactments, namely, OCSLA, 43 U.S.C. §§ 1331–1356b, and the Oil Pollution Act ("OPA"), Pub. L. No. 101-380, 104 Stat. 480 (1990) (codified as

amended in scattered sections of 33 U.S.C., 43 U.S.C., and 46 U.S.C.), the foundational

statute that informed the Settlement Agreement.  *See, e.g.*, Agreement ¶ 36.1 (agreement

"shall be interpreted . . . in a manner intended to comply with OPA").

24. Claims under OCSLA are not subject to the well-pleaded complaint rule.  *Amoco Prod. Co.*

*v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988) ("In determining federal

court jurisdiction, we need not traverse the Serbonian Bog of the well pleaded complaint rule

. . . because § 23 of OCSLA expressly invests jurisdiction in the United States District

Courts.") (citation omitted).  Hence, in OCSLA cases the Court must look to the gravamen of

the case and not to artful pleading.

25. OCSLA not only provides that federal courts have original jurisdiction over all cases arising

out of Shelf operations, it also directly specifies that federal law governs as a substantive

matter.  *See* 43 U.S.C. § 1333(a)(1).  Hence, federal question jurisdiction under 28 U.S.C.

§ 1331 inherently and unavoidably exists over claims that arise out of Shelf conduct without

regard to claims made by plaintiffs that a source of law other than federal law controls.  The

Fifth Circuit has held that OCSLA confers both original and removal jurisdiction, regardless

of whether state law supplies the rule of decision.  *Barker v. Hercules Offshore, Inc.*, 713

F.3d 208, 214 (5th Cir. 2013).

**This Court Has Jurisdiction Pursuant to the Diversity Jurisdiction Statute.**

26. This Court also has diversity jurisdiction under 28 U.S.C. § 1332, the federal diversity

jurisdiction statute.  Plaintiffs and Defendants (with the exception of Mr. Kunzelman, who

was improperly joined) are completely diverse, and the alleged amount in controversy

exceeds $75,000.  *See* 28 U.S.C. § 1332(a); *Silvestrini v. Intuitive Surgical, Inc.*, No. 11-

2704, 2012 WL 380283, at *3 (E.D. La. Feb. 6, 2012).

27. Plaintiff Jonathan Andry is a resident of Louisiana. Pet. Introduction. Plaintiff The Andry Law Group, LLC is incorporated in and doing business in Louisiana. *Id.*

28. Defendant BP Exploration & Production Inc. is incorporated in Delaware and has its principal place of business in Texas. Defendant BP America Production Company is incorporated in Delaware and has its principal place of business in Texas. Defendant Mark Holstein is a Texas resident. Thus, Plaintiffs are completely diverse from BP Defendants. *See* 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806); *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam).

29. Defendant Michael Kunzelman allegedly is a resident of the Parish of Orleans, Louisiana. Pet. ¶ 1. But because Plaintiffs improperly joined Mr. Kunzelman, Mr. Kunzelman's status as an in-state defendant will not defeat removal jurisdiction.[5]

30. Improper joinder is established by showing "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). Defendant must demonstrate "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*).

31. Defamation claims are subject to a one-year statute of limitations in Louisiana. *See Farber v. Bobear*, 56 So. 3d 1061, 1069 (La. Ct. App. 2011) (citing La. Civ. Code art. 3492). Plaintiffs appear to have filed their Petition on January 19, 2015. The alleged wrongful acts by Mr. Kunzelman occurred more than one year before Plaintiffs filed their Petition. *See* Pet. ¶¶ 12–

---

[5] The federal removal statute permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). While suits arising under federal law are removable without regard to the citizenship of the parties, all other suits are removable only if "none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b)(2) (emphasis added).

16 (alleging that Mr. Kunzelman authored a June 21, 2013 article for the Associated Press containing defamatory statements).  Therefore, Plaintiffs fail to state a claim under state law against Mr. Kunzelman, and Plaintiffs' Petition could not survive a motion to dismiss the claim against him pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Smallwood*, 385 F.3d at 573.  Plaintiffs' improper joinder does not operate to destroy complete diversity.  *See Silvestrini*, 2012 WL 380283, at *4–8.

32. Plaintiffs claim that as a result of the alleged defamation, they have "los[t] a substantial amount of clients."  Pet. ¶ 26.  They allege that Defendants' conduct "has severely damaged the plaintiffs' ability to get new cases and business" and destroyed plaintiffs' reputation with respect to potential and current clients.  *Id.*  Plaintiffs seek damages "in an amount reasonable in the premises, together with legal interest from the date of judicial demand until paid, all costs of these proceedings in addition to all other just and equitable relief."  *Id.*

33. It is facially apparent from Plaintiffs' Petition that the Petition alleges damages above $75,000.  The Petition claims that Plaintiff attorney and law firm lost a "substantial" number of clients and failed to attract new clients as a result of the alleged defamation.  *Id.*  The value of such alleged lost representations coupled with Plaintiffs' allegedly "destroyed . . . reputation" that allegedly "has severely damaged the plaintiffs' ability to get new cases and business" and allegedly "destroyed plaintiffs' reputation with current clients" would exceed $75,000.  *Id.*  Therefore, the amount in controversy requirement is met.

**Removal, a Necessary Predicate for Consolidation of This Case in the MDL, Is Proper.**

34. Plaintiffs' claim concerning BP's obligations under the Settlement Agreement and their allegations that BP attempted to evade these obligations through a strategy that included deliberate defamation fall within the Eastern District of Louisiana's continuing and exclusive

jurisdiction.  Additionally, Plaintiffs' allegations that Defendants defamed them by repeating in court filings, advertisements, and news reports the results of Special Master Freeh's investigation of the CSSP are premised on wrongdoing by Special Master Freeh in the course of performing his court-appointed duties.  Plaintiffs' allegations that Special Master Freeh was not "independent" and that his conclusions were false fall within the continuing and exclusive jurisdiction of the Eastern District of Louisiana.

35. There can be no debate concerning the Eastern District of Louisiana's "continuing and exclusive" jurisdiction over the Settlement Agreement and its implementation.  As discussed above, the Fifth Circuit has confirmed the court's jurisdiction.  *See, e.g.*, *Lake Eugenie Land Dev. v. BP Exploration & Prod. (In re Deepwater Horizon)*, 732 F.3d at 339; *BP Exploration & Prod. Inc. v. Johnson*, 538 F. App'x 438.  While the latter case itself accepts and applies the broad reach of OCSLA's jurisdictional provision, the former removes any doubt that settlement administration and the operation of the CSSP *specifically* fall within the court's exclusive trial-court purview.

36. Removal to this Court is a necessary prerequisite for consolidating this case in the MDL.  For the reasons previously discussed, this Court has jurisdiction over this action and—in the event a motion to remand is made before venue is transferred to the MDL—it should deny any motion to remand, thereby allowing this case to be removed and consolidated in the MDL.

## **VENUE AND REMOVAL**

37. In accordance with 28 U.S.C. § 1446(a), BP is filing this Notice of Removal in the federal district court and division embracing the state court where the State Court Action was pending.

38. This matter is removable pursuant to 28 U.S.C. § 1441 as a civil action over which the United States District Court for the Western District of Louisiana has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 43 U.S.C. § 1349.

## EFFECTUATION OF REMOVAL

39. BP hereby removes this action to the United States District Court for the Western District of Louisiana.

40. By filing this Notice of Removal, BP expressly consents to the removal.

41. BP attaches as Exhibit C hereto Mr. Holstein's consent to removal.  BP Exploration & Production Inc. has not been served, but out of an abundance of caution, BP attaches its consent to removal as Exhibit D.

42. Mr. Kunzelman's consent to removal is not required because he was improperly joined.  *See Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) (per curiam).  Nevertheless, Mr. Kunzelman's consent is attached as Exhibit E.

43. A copy of all process, pleadings, and orders served upon BP in the State Court Action is attached hereto as Exhibit B, as required by 28 U.S.C. § 1446(a).

44. BP attaches as Exhibit F hereto a copy of the Notice of Removal to Opposing Counsel, which will be served upon Plaintiffs and filed with the Clerk of the 16th Judicial District Court, Parish of Iberia, Louisiana, as required by 28 U.S.C. § 1446(d).

45. The allegations of this Notice were true at the time the State Court Action was commenced and remain true as of the date of filing of this Notice of Removal.

46. This Notice of Removal is signed under Rule 11 of the Federal Rules of Civil Procedure, as required by 28 U.S.C. § 1446(a).

WHEREFORE, BP hereby removes this action to the United States District Court for the

Western District of Louisiana, Lafayette Division.


Respectfully submitted on:  May 18, 2015


|  | */s/ Don K. Haycraft* |
|---|---|
| Of Counsel: | Don K. Haycraft (Bar # 14361) |
|  | Devin C. Reid (Bar # 32645) |
| Kevin M. Downey | LISKOW & LEWIS |
| Steven M. Pyser | 701 Poydras Street, Suite 5000 |
| WILLIAMS & CONNOLLY LLP | New Orleans, LA 70139 |
| 725 Twelfth Street, N.W. | Telephone: (504) 581-7979 |
| Washington, DC 20005 | Facsimile: (504) 556-4120 |
| Telephone: (202) 434-5000 | dkhaycraft@liskow.com |
| Facsimile: (202) 434-5029 | dcreid@liskow.com |
| kdowney@wc.com |  |
| spyser@wc.com | ***Attorneys for Defendant BP America*** |
|  | ***Production Company*** |


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2015, a copy of the foregoing pleading was filed

electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be

sent to all counsel of record registered to receive electronic service by operation of the court's

electronic filing system.  I also certify that I have served this filing by hand delivery, facsimile,

electronic transmission, or United States Postal Service to counsel for plaintiff.


*/s/ Don K. Haycraft*_____